Nathan Dwayne Thomas petitioned this Court to grant a writ of certiorari to review the Court of Criminal Appeals' affirmance of his conviction of murder in the Montgomery County Circuit Court. After deciding that the issue possessed probable merit, we granted the writ. *Page 1157 
The State charged Thomas with murder for his alleged participation in a "drive-by" shooting; the shooting was carried out from a car that contained four young males. The issue for our review — which is one of first impression in this state — is whether the trial court should have granted Thomas's motion for a mistrial after the prosecutor elicited testimony from another passenger of the car, Clarence Sweeney, that Thomas was a member of a "gang."
Thomas's argument is based upon the following events that occurred at his trial:
 "Q. [by the district attorney] Clarence, are you a member of a gang?
"A. [by State witness Clarence Sweeney] No, sir.
"Q. Is Nathan a member of a gang?
"A. Used to be.
 "DEFENSE COUNSEL HENDLEY: Objection. That is irrelevant, Judge. No probative value.
"THE COURT: Overrule.
"Q. Answer the question.
"A. Used to be.
"Q. Used to be a member of what gang, please?
"A. Vice Lords."
Later, Sweeney testified, without objection, that the driver of the car was a member of the "Bloods" gang and that Thomas and the driver were "not even in the same gang."
Thomas then moved for a mistrial, or, in the alternative, for a curative instruction. The trial court, after forbidding the parties from further mention of gangs, stated:
 "I'm going to deny your motion for a mistrial. If you want me to give some kind of limiting instruction, I will entertain doing that. You prepare an instruction for me during the lunch recess and let me look at it. However, I'm concerned that any instruction you may bring may be more detrimental than it will be helpful to you."
Thomas argues that the testimony concerning his membership in a gang was irrelevant and so highly prejudicial as to require the trial court to grant his motion for a mistrial. The Court of Criminal Appeals agreed that the testimony was prejudicial, stating:
 "We equate the association of the defendant with a 'gang' as evidence of a collateral criminal act that is presumptively prejudicial and that is admissible only when probative and under certain limited exceptions."
Thomas v. State, 625 So.2d 1149, at 1153 (Ala.Cr.App. 1992).
The State, although implicitly agreeing that the testimony was irrelevant, nevertheless asserts that the testimony was not so prejudicial as to require a reversal. It asserts that the term "gang" does not necessarily indicate bad character or criminal activity on Thomas's part. We reject this argument, and agree with the reasoning of the Court of Criminal Appeals on this point. In light of the massive media coverage of gang violence in contemporary society, the assertion that a defendant's membership in a gang called the "Vice Lords" will not prejudice him in the eyes of a jury is simply untenable. See generally People v. Munoz, 157 Cal.App.3d 999,204 Cal.Rptr. 271 (1984); State v. Ballantyne,128 Ariz. 68, 623 P.2d 857 (Ariz.App. 1981); People v. Perez,114 Cal.App.3d 470, 170 Cal.Rptr. 619 (1981); Susan L. Burrell,Gang Evidence: Issues for Criminal Defense, 30 Santa Clara L.Rev. 739 (1990). The State also argues that the testimony, although erroneously admitted, does not require a reversal because Thomas refused the trial court's offer to give a curative instruction. The Court of Criminal Appeals based its affirmance on this rationale.
Initially, we note that it is true that a mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice, Samuel v. State, 455 So.2d 250
(Ala.Cr.App. 1984), and that the decision of whether to grant a motion for a mistrial rests within the sound discretion of the trial court. Ala. Code 1975, § 12-16-233; Ex parte Jefferson,473 So.2d 1110 (Ala. 1985), cert. denied, 479 U.S. 922,107 S.Ct. 328, 93 L.Ed.2d 300 (1986). It is also true that under certain circumstances prejudicial testimony may be eradicated by curative instructions by the trial court. Cole v. State,548 So.2d 1093 (Ala.Cr.App. 1989); Jefferson, supra. Furthermore, *Page 1158 
defense counsel's refusal of the trial court's offer to give curative instructions prevents the defendant from receiving relief on appeal under certain circumstances. Campbell v.State, 570 So.2d 1276 (Ala.Cr.App. 1990); Carlisle v. State,533 So.2d 645 (Ala.Cr.App. 1987); Renfroe v. State, 382 So.2d 627
(Ala.Cr.App. 1980), cert. denied, 382 So.2d 632 (Ala. 1980).
Here, however, the situation is very different from the situations presented in the cases cited above. First, the prejudice in those cases primarily resulted from inadvertent slips by witnesses. In contrast, here the prejudicial testimony was deliberately elicited by the prosecutor immediately after the defense had asked the trial court to poll the jurors to ascertain whether they had heard media references to gang-related activity in the case. Therefore, the jury had already heard references to gangs at least four times before it retired for deliberations. Although the trial court did offer to give curative instructions, it was unsure whether the instructions would ameliorate or exacerbate the situation. This is made clear by the trial court's statement to defense counsel:
 "However, I'm concerned that any instruction you may bring may be more detrimental than it will be helpful to you."
(Emphasis added.) The trial court's reluctance to give the curative instruction stands in marked contrast to the trial court's actions in Carlisle, supra, where the court stated that it would give the curative instruction in "as strong a terms [sic]" as possible. 533 So.2d at 650. Similarly, in Renfroe,supra, the trial court stated that it had not given the curative instructions because the risk of prejudice was slight and because the defendant refused the instructions.
It is also clear that Thomas was under no obligation to request the curative instruction, because the error was already preserved for appellate review. Stephens v. State,250 Ala. 123, 33 So.2d 245 (1947). Thomas merely requested the curative instruction after the prosecution continued to elicit testimony regarding gangs.
Moreover, curative instructions are used primarily when an objection to prejudicial testimony is sustained; the instruction serves to eradicate the harmful effects of the inadmissible testimony. In such situations, the consistent actions of the trial court serve to totally nullify the effect of the testimony. Here, the overruling of the objection had the effect of communicating to the jury that the evidence was relevant and probative; any later inconsistent action by the trial court had at least the possibility of confusing the jury or reinforcing the inadmissible evidence in their minds.
Because the testimony regarding Thomas's gang membership was irrelevant and highly prejudicial, and because Thomas was under no obligation to accept the trial court's offer to give a curative instruction under these circumstances, we hold that the Court of Criminal Appeals erred in affirming Thomas's conviction. Therefore, the judgment is reversed and the case is remanded for the Court of Criminal Appeals to order a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES and ADAMS, JJ., concur.
KENNEDY, J., concurs in the result.