This appeal involves the introduction of evidence of the defendant's prior bad acts. Melisa Jessica Lawrence was convicted of second-degree theft. She formerly had worked for Mark King, an agent of State Farm Insurance Company. The indictment charged that in May 1997, as an employee of Mark King, she had received certain premium payments from customers and had failed to remit those payments to the company. Before her trial, Lawrence filed a request pursuant to Rule 404(b), Ala. R. Evid., for notice of evidence of other crimes, wrongs, or acts the prosecutor intended to introduce at trial. Rule 404(b) provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
(Emphasis added.) Pursuant to Rule 404(b), the prosecutor notified Lawrence's attorney that the State intended to introduce evidence of Lawrence's nine misdemeanor convictions in 1996 for negotiating worthless instruments.
During the trial, Lawrence testified on direct examination that she had had no financial problems while she was working at the insurance company because during that time, she said, her mother was giving her money. On cross-examination, the prosecutor asked Lawrence about her convictions for negotiating worthless instruments. During re-direct examination, defense counsel elicited from Lawrence testimony that the worthless-check convictions occurred during a time when she was having marital problems and that some of the worthless checks were written to draw from a joint account that she said her former husband had closed without her knowledge. During re-cross-examination, the prosecutor asked Lawrence whether "this [was] the only time [she had] had this problem." Lawrence stated: "I am not saying that it happened all at one time there. It happened in a spread of a period of time." The prosecutor then questioned Lawrence about other instances of negotiating worthless checks, instances for which she had not been convicted, and which had occurred from 1991 to 1997. *Page 52 
Defense counsel objected to the questioning because the prosecutor had not provided notice, pursuant to Rule 404(b), that she intended to present evidence of any prior worthless-check instances that did not involve convictions. Defense counsel also moved for a mistrial, on the grounds that Lawrence had been substantially prejudiced by the jury's hearing the questions about other instances of Lawrence's writing bad checks. The prosecutor argued that there was no discovery violation because, the prosecutor said, she was attempting to rebut Lawrence's testimony in which Lawrence had explained her 1996 convictions. Specifically, the prosecutor claimed that Lawrence stated that she had negotiated worthless checks only during a specific period of time; therefore, the prosecutor argued, she should be permitted to show that the conduct had occurred over an extended period of time. The trial court listened to the examination of Lawrence and concluded that she had testified that her writing of bad checks had occurred "over a spread of time." The trial court agreed that the evidence regarding other instances of writing bad checks was not admissible as rebuttal evidence, but denied defense counsel's motion for a mistrial and gave the jury a curative instruction. The jury returned a verdict of guilty. The Court of Criminal Appeals, on August 20, 1999, affirmed, by an unpublished memorandum. Lawrence v. State, (No. CR-98-0847), 778 So.2d 873
(Ala.Crim.App. 1999) (table). We granted Lawrence's petition for certiorari review. We now affirm.
 I.
Lawrence contends that the State was required to give notice, pursuant to Rule 404(b), Ala. R. Evid., before it could present evidence of prior instances of Lawrence's writing bad checks, regardless of how that evidence was used at trial. The interpretation of Rule 404(b) in this context presents an issue of first impression in Alabama.
The State argues that it did not violate the discovery rules because, it says, the evidence was not offered under Rule 404(b) as substantive evidence in the State's case-in-chief, but was offered pursuant to Rule 404(a)(1) as rebuttal evidence. Rule 404(a) provides:
 "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
 "(1) . . . Evidence of character offered by an accused, or by the prosecution to rebut the same. . . ."
The State argues that after having her credibility impeached under Rule 609 by proof of convictions involving dishonesty or false statement, Lawrence attempted to rehabilitate her own credibility by explaining the prior convictions. The State contends that this testimony was an attempt to convince the jury of her good character by implying that no similar activities had ever occurred. Therefore, the State contends, Lawrence placed her character in issue by her evidence and that the State therefore was entitled to rebut that character evidence by evidence regarding other instances of Lawrence's negotiating worthless checks. We disagree.
Even if we assumed, as the State suggests, that Lawrence's testimony injected her character into the trial, the State would not be entitled to introduce evidence of specific bad acts to rebut that evidence. "Once the accused introduces evidence of good character, the door is opened for the prosecution to rebut with proof of the accused's bad character. However, the prosecution may not prove the accused's bad character by showing prior specific acts." Charles W. Gamble, McElroy's AlabamaEvidence § 26.01(1) (5th ed. 1996).
The State cites United States v. Roper, 135 F.3d 430, 433-34
(6th Cir. 1998), wherein the court held that the defendant, "by pursuing his affirmative defense of entrapment and through his direct testimony," *Page 53 
injected his character into evidence, and that this fact authorized the prosecution to inquire into prior bad acts, without having given the notice contemplated by Rule 404(b). However, the State fails to take into account that an entrapment defense makes the accused's propensity for committing the kind of act charged an essential element of the State's proof and thereby opens the door to evidence of collateral relevant misconduct. Rule 405(b), Ala. R. Evid., specifically provides for this type of situation: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct." The Roper court acknowledged that evidence of the defendant's criminal history of previous cocaine sales was admissible pursuant to Rule 405(b), Fed. Evid., based on the defendant's entrapment defense.
In addition, the Roper court stated that "the prosecution — at its first opportunity after becoming aware of the extent and substance of Roper's entrapment defense and his direct testimony disclaiming a criminal history — provided notice to the court and the defendant of its intent to discredit his assertions by extrinsic, substantive evidence." 135 F.3d at 434. Rule 404(b) provides for notice to be given during the trial "if the court excuses pretrial notice for good cause shown." However, the prosecutor in this present case did not attempt to give notice during trial, nor did she show good cause for not giving pretrial notice.
The State also cites Ex parte Woodall, 730 So.2d 652 (Ala. 1998), for the proposition that Lawrence's testimony put her character in issue. The State's reliance on Woodall is misplaced. In that case, this Court held that "even if the defendant had chosen to place his character in issue, by presenting evidence that it was good, the state generally would not be permitted to present evidence showing he was in fact guilty of committing prior specific uncharged bad acts." 730 So.2d at 663. In addition,Woodall, in explanation, quoted, at page 663, McElroy's AlabamaEvidence § 26.01(1): "Once the accused introduces evidence of good character, the door is opened for the prosecution to rebut with proof of the accused's bad character. However, the prosecution may not prove the accused's bad character by showing prior specific acts."
Even if the evidence of Lawrence's other acts of negotiating worthless instruments had been admissible as rebuttal evidence, the State's failure to provide notice that it would offer such evidence renders it inadmissible. Rule 404(b), Ala. R. Evid., is identical to Federal Rule 404(b). The Advisory Committee Note to the 1991 Amendment of Rule 404(b) states:
 "The amendment requires the prosecution to provide notice, regardless of how it intends to use the extrinsic act evidence at trial, i.e., during its case-in-chief, for impeachment, or for possible rebuttal. . . . Because the notice requirement serves as condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides that the notice requirement has not been met."
(Emphasis added.) The Advisory Committee Notes to the federal rules are persuasive authority in our interpretation of the Alabama rules. In addition, the Advisory Committee's Notes to our Rule 404(b) specifically refer to the federal rule, stating:
 "The `provided' clause of section (b) requires pretrial notice to the accused of the prosecution's intent to use evidence of collateral misconduct. This `provided' clause is based upon an amendment to the corresponding federal rule adopted in 1991. See Fed.R.Evid. 404(b)."
Therefore, we hold that Rule 404(b), Ala. R. Evid., like Rule404(b), Fed.R.Evid., requires that the prosecution "provide notice, regardless of how it intends to use the extrinsic-act evidence at trial, i.e., during its case-in-chief, for impeachment, or for possible rebuttal." *Page 54 
The State concedes that the Advisory Committee Note to Federal Rule 404(b) indicates that the prosecution must provide notice of other-acts evidence, regardless of how it intends to use that evidence at trial. However, the State argues that the notice requirement of Rule 404(b), Ala. R. Evid., should not be extended to every conceivable use of prior-bad-acts evidence. Rather, the State contends, "compliance with the notice requirement should be addressed in light of the State's reasonably anticipated intent to use prior-bad-acts evidence at the time notice was given." State's brief, p. 20. In this case, four days before the trial, Lawrence requested notice pursuant to Rule 404(b). The prosecution gave notice to Lawrence's attorney, on the day before the trial began, regarding the nine convictions. On the day of the trial, the prosecutor carried into the courtroom packets containing bad checks for which Lawrence had not been convicted, and she had them ready to use.
The purpose of the notice requirement in Rule 404(b) is "to reduce surprise and promote early resolution on the issue of admissibility." Advisory Committee Note to 1991 Amendment, Rule404(b), Fed.R.Evid. Regardless of whether the prosecutor had any intent to use the prior-bad-acts evidence at the time she gave notice, our Rule 404(b) requires that some notice be given, even "during trial if the court excuses pretrial notice on good cause shown." Rule 404(b), Ala. R. Evid. Therefore, at a minimum, the prosecutor should have given notice during trial, when it became apparent that evidence of the prior acts would be offered as rebuttal evidence.[1] The trial court would then have had the discretion to determine whether the prosecution had shown good cause for not giving notice before the trial and whether the evidence was admissible. Because the notice requirement serves as a condition precedent to the admissibility of Rule 404(b) evidence, the prosecutor's failure to give Lawrence notice renders that evidence inadmissible.
Lawrence also raises the issue whether Rule 608(b), Ala. R. Evid., permits inquiry into a witness's specific instances of conduct, for impeachment purposes, despite the language of Rule 608(b) prohibiting such inquiries. However, the State contends that the evidence of Lawrence's other acts of negotiating worthless instruments was not offered as impeachment evidence pursuant to Rule 608(b). In addition, our holding that the evidence was made inadmissible by the prosecution's failure to provide notice precludes any need to discuss the issue regarding Rule 608(b).II. Because we have held inadmissible the evidence of Lawrence's prior acts of negotiating worthless instruments that did not result in convictions, we must determine the consequences of the prosecutor's questioning regarding that evidence.
After concluding that the prior-acts evidence was inadmissible, the trial court denied Lawrence's motion for a mistrial and gave the jury the following curative instruction:
 "Now ladies and gentlemen, the State has offered proof of prior convictions of the defendant for negotiating worthless instruments in an attempt to attack the defendant's credibility. The State is allowed to so proceed and when it does *Page 55 
that proof may be considered for whatever value it has, if any, about credibility of the witness and for nothing else whatsoever.
 "In addition, the State has attempted to mention what it alleges to be other bad checks that did not result in any conviction. That it may not do. Any such references are entirely excluded from your consideration and I will tell you why. It is wrong to look back at a person's life and choose distant and unrelated acts that could be considered in some fashion improper and then interject them into an ongoing trial. The law will not allow it because if it did that course would tend to cause convictions in any case except when a perfect man was on trial.
 "Thus, you must exclude such matters entirely from your consideration and I direct you to do so in the strongest possible terms. Now I am going to ask each of you if you can and will do that."
The trial court then polled the jurors, and they all indicated affirmatively that they could ignore the references to the inadmissible evidence.
Lawrence argues that the trial court's denial of a mistrial requires a reversal, based on this Court's holding in Ex parteSparks, 730 So.2d 113, 115 (Ala. 1998). In Sparks, this Court reversed a conviction because the prosecutor had improperly elicited testimony about the defendant's prior convictions, in violation of the exclusionary rule, and it held that a curative instruction was not sufficient to overcome the prejudice in that case. The Sparks opinion stated:
 "[T]his Court cannot condone a prosecutor's attempt to elicit testimony about a defendant's prior convictions in violation of the general exclusionary rule against such evidence. Moreover, reported cases involving such improper questioning — and a subsequent denial of the defendant's motion for a mistrial — are all too common. . . . Consequently, it appears to this Court that the current approach to these situations is inadequate insofar as it allows prosecutors a `free shot' at asking an improper question about a defendant's prior criminal record while providing little means to protect the defendant's right to a fair trial other than a mere corrective instruction to the jurors, which is administered only after the defendant has been exposed to the prejudice caused by the prosecutor's questioning."
730 So.2d at 115. (Emphasis original.) (Citations omitted.) InSparks, the defendant was on trial for charges of driving under the influence. The prosecutor asked him on cross-examination if he recalled having been convicted of DUI on a previous occasion. This Court found the question to be so highly prejudicial that it could not be corrected with a mere corrective instruction to the jury. 730 So.2d at 116.
"[A] mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice." Ex parte Thomas,625 So.2d 1156, 1157 (Ala. 1993). A mistrial is an extreme measure that should be taken only when the prejudice cannot be eradicated by instructions or other curative actions of the trial court. Nix v.State, 370 So.2d 1115, 1117 (Ala.Crim.App.), cert. denied,370 So.2d 1119 (Ala. 1979). If an error can be effectively cured by an instruction, a mistrial is too drastic a remedy and is properly denied. Thompson v. State, 503 So.2d 871, 877 (Ala.Crim.App. 1986).
The questions regarding Lawrence's prior bad acts were prejudicial, especially considering that these acts had not led to convictions. However, this case is distinguishable from Sparks
because, in that case, the evidence of prior bad acts involved the same crime for which Sparks was on trial. This case is different from Sparks, in that the questions regarding Lawrence's prior acts of negotiating worthless instruments did not have the effect of suggesting that she committed *Page 56 
the charged offense. While the questions regarding the prior acts were prejudicial, in that they suggested motive and affected Lawrence's credibility, the evidence they called for would have been cumulative as to the evidence regarding nine convictions for negotiating worthless checks, evidence that was properly admitted. A trial court's ruling on a motion for a mistrial will be reversed only upon "a clear showing of abuse of discretion." Ex parte Jefferson, 473 So.2d 1110,1114 (Ala. 1985). Considering the nature of the prior-acts evidence and the court's prompt and thorough curative instruction given to the jury, we cannot say the trial court abused its discretion in denying Lawrence's motion for a mistrial.
AFFIRMED.
Maddox, Houston, Cook, See, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] This approach is consistent with the plain language of Rule 404(b) and with the holdings of other courts. See United Statesv. Barnes, 49 F.3d 1144, 1148 (6th Cir. 1995) (holding that once a defendant makes a request for notice of "other-crimes" evidence that the prosecution intends to use at trial, "the request imposes a continuing obligation on the government to comply with the notice requirement of Rule 404(b) whenever it discovers information that meets the previous request"); United States v.Spinner, 152 F.3d 950, 961 (D.C. Cir. 1998) (holding that the prosecution should have given notice of its intent to introduce bad-acts evidence pursuant to Rule 404(b) after "something [arose] in the defense case that was unexpected").